Harold H. Emmons v. Commissioner.
Emmons v. Commissioner
Docket No. 110123.
United States Tax Court
1943 Tax Ct. Memo LEXIS 478; 1 T.C.M. (CCH) 515; T.C.M. (RIA) 43054; January 30, 1943
*478 1. Petitioner in 1928, 1929 and 1930 loaned money to a friend and associate who was in the real estate business. The debtor became heavily involved and went into bankruptcy in 1931. Petitioner's debt was scheduled as a secured debt but the trustee in bankruptcy reported to the court that the alleged security had no value and nothing was paid on it. After the debtor's discharge from bankruptcy in 1931 he acknowledged his continued indebtedness to petitioner in a letter addressed to petitioner. The debtor never paid anything on the debt, all the collateral had become worthless prior to the year 1937 and the debt was worthless prior to 1937. Held, petitioner did not ascertain, for the first time, the debt to be worthless in 1937 and is not entitled to a bad debt deduction therefor in 1937. 2. Petitioner in 1937 and 1938 loaned certain sums of money to a friend and associate with whom he had formerly had business transactions but who had been wiped out by the depression. The loans were made to help the debtor get started again. The enterprises which the debtor was promoting were not successful and in 1939 the debtor was indicted for violating the Federal lottery laws. Petitioner learned *479 that the debtor had no assets and could pay him nothing. Held, the debt in question became worthless in 1939 and petitioner is entitled to the bad debt deduction which he claims under section 23(k), Internal Revenue Code, as amended by section 124 of the Revenue Act of 1942. Harold H. Emmons, Esq., 2530 Union Guardian Bldg., Detroit, Mich., pro se. Melvin S. Huffaker, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion The Commissioner has determined deficiencies in petitioner's income tax as follows: Amount of
Year
Deficiency
1937
$ 615.86
1938
141.72
1939
1,292.28
Total
$2,049.86
The petitioner does not allege any errors as to the year 1938 and concedes that the deficiency which the Commissioner has determined for that year is correct. Petitioner does not contest the adjustments which the Commissioner made for the years 1937 and 1939 which resulted in the deficiencies for those years. Petitioner does contest, however, the deficiencies determined for those years by alleging certain bad debt deductions not claimed on petitioner's income tax returns for those years but which he now claims as deductions. Petitioner alleges that for the year *480 1937 the Commissioner erred in not allowing a deduction for a bad debt of $85,000 which petitioner held against one Ezra Jones, now deceased. For the year 1939 petitioner alleges that the Commissioner erred in not allowing a deduction for a bad debt of $3,625 which petitioner held against one, F. W. Benduhn. We shall treat these alleged errors separately and in the order of their assignment. Findings of Fact Petitioner is an individual with residence at 91 Martin Place, Detroit, Michigan. For each of the taxable years involved he filed his income tax return with the Collector of Internal Revenue for the District of Michigan at Detroit, Michigan. - 1937 - Prior to the years 1927 and 1928 petitioner had a friend who was engaged in the real estate business in Detroit, Michigan, by the name of Ezra H. Jones. Jones for awhile, did a prosperous and extensive real estate business but he became heavily involved financially and needed some additional funds to help carry him along. He applied to petitioner for funds and in the next two or three years, petitioner advanced Jones as loans a total amount of $48,000 in cash. Petitioner also became liable on a contract of guaranty with the Union *481 Trust Company for Jones to the extent of $40,000. The evidence does not disclose what, if anything, petitioner ever had to pay out on account of this contract of guaranty. In 1931 Jones filed a petition in bankruptcy and was duly adjudged a bankrupt. The trustee in bankruptcy later reported to the court that he had received "no funds in this estate and have made no disbursements". In Schedule B-3, the trustee in bankruptcy scheduled the following choses in action: Number
Estimated or
Name
of Shares
Par Value
DetroitAircraft Corporation
10
$ 150.00
Ecorse Road Syndicate
3,400.00
Tam-O'Shanter membership
3,500.00
Griffith Syndicate
6.0274%
2,612.91
Mutter Lepper Corporation
2550
31,250.00
(2500 shares pledged as collateral with National
Bank of Commerce on note of $12,000.00)
Jay A. Walsh Land Corporation
25
2,417.82
Ezra H. Jones Realty Co.
748
7,480.00
Ezra H. Jones, Inc
8
800.00
National Town & Country Club
Tampa Bay Syndicate
28
2,800.00
Jones Investment Company
3099
30,990.00
$85,400.73
(All of the above property not above mentioned as specifically assigned to others has been pledged and delivered, together with other property, to Harold *482 H. Emmons of Detroit, Michigan, as security for indebtedness to him of $48,000.00.) In his final report and account to the court the trustee in bankruptcy reported, among other things, as follows: The personal property of the bankrupt, namely stock in certain corporations, which stock was pledged as security for indebtedness to one, Harold H. Emmons, which pledge could not be set aside, was worthless. * * * The eight shares of stock in Ezra H. Jones, Inc., par value of $800 was in a corporation which had no assets and was merely the incorporation of the individual, Ezra H. Jones. This corporation was dissolved in 1937 and the stock had no value at the time of the dissolution nor had it any value for at least several years prior to the date of dissolution. After Jones was discharged in bankruptcy in 1931, he acknowledged his indebtedness to petitioner by the following letter dated May 26, 1931: Mr. Harold H. Emmons, Detroit, Michigan. Dear Mr. Emmons: I hereby acknowledge my indebtedness to you in the amount of $85,000.00. I desire to pay same as soon as possible, but must have a reasonable opportunity to do so. From my earnings, I will turn over to you all sums received *483 after retaining a reasonable amount for living expenses and setting aside 10% of same for future living or business expenses so as to be assured of a reasonable sum on hand for contingencies. It is to be understood that I also desire to pay certain other creditors on a pro-rata basis, the total amount of such indebtedness to others not exceeding $15,000.00. I will furnish you with a list of such creditors and amounts due. It is further understood that you are holding certain properties as security for the amount I owe you, most of which will require further payments in order to protect same. The sums you advance for such purposes will be considered as a prior claim by me and I will re-pay same together with interest thereon before making payment to any other creditors. You are to have the right to sell the securities held by you at the market price at any time you desire, the net proceeds from such sales to be applied on said indebtedness. It is further understood that I am indebted to the law firm of Emmons, Oren & Sleeper in the amount of $15,000.00, and that such is to be paid on the same pro-rata basis as my other creditors. It is further understood that within the very *484 near future a definite agreement is to be entered into between us covering this situation in detail. Very truly yours, [Signed] Ezra H. Jones. Jones never paid anything to petitioner on his debt, acknowledged by the foregoing letter. The debt was worthless in 1937. It became worthless prior to 1937 and petitioner did not, for the first time, ascertain it to be worthless in the year 1937. Opinion BLACK, Judge: In support of his claim for a deduction as a bad debt in 1937, of his indebtedness against one, Ezra Jones, petitioner relies upon two grounds: (1) that the shares of stock in Ezra Jones, Inc. which were up as collateral to secure Jones' indebtedness became worthless in 1937 because that corporation was dissolved in 1937 and ceased to exist; and (2) that the Michigan statute of limitations ran against the collection of the indebtedness against Jones in 1937. Taking up reason (1) mentioned above, the testimony shows that the corporation, Ezra Jones, Inc. was dissolved in 1937 without any assets and ceased to exist. The evidence, however, does not show that at any time in 1937 this stock had any value. On the contrary, the evidence tends to show that at no time after Ezra *485 Jones' discharge from bankruptcy in 1931 did this stock have any value. It was merely a speculative hope based upon Ezra Jones making good in the real estate business, which he apparently never did, after his bankruptcy. Petitioner conceded that all the other collateral which was put up by Ezra Jones to secure the payment of the indebtedness had become worthless and had faded out of the picture prior to January 1, 1937. We are of the opinion that the stock in Ezra Jones, Inc. had also faded, out of the picture, so far as any value was concerned, long prior to 1937. We hold that petitioner has not sustained his burden of showing that he ascertained his indebtedness against Ezra Jones to be worthless in 1937 by any showing that he has made based on the fact that Ezra Jones, Inc. was dissolved in 1937 without assets. See Curtis v. Helvering, 110 Fed. (2d) 1014; Curry v. Commissioner, 117 Fed. (2d) 307. We will next discuss petitioner's (2) ground upon which he bases his claim for this bad debt deduction, namely, that the Michigan statute of limitations ran against the collection of the debt in 1937. Evidence that the statute *486 of limitations has run in the taxable year against a debt that was clearly worthless prior to the taxable year, is not sufficient to grant a taxpayer a bad debt deduction. See Charles N. Spratt, 43 B.T.A. 503. In that case at page 513, we said, among other things, as follows: * * * According to petitioner's testimony the conditions and prospects for payment were no poorer in that year than they had been for several years prior thereto. Breen always indicated his willingness to pay the debt as soon as he was in a position to do so. The only change in the situation in 1935 appears to have been the running of the statute of limitations. This Board has repeatedly held that the availability of such a defense to a debtor is not a sufficient ascertainment of worthlessness to justify a charge-off of a note or other debt. Leo Stein, 4 B.T.A. 1016; Ralph H. Cross, 20 B.T.A. 929, aff'd., 54 Fed. (2d) 781. * * * Because of the reasons stated above, we held against petitioner's first assignment of error to the effect that the Commissioner erred in not granting him a deduction *487 in 1937 for a bad debt against Ezra Jones, ascertained to be worthless and charged off in that year. [The Facts] For several years prior to 1937 petitioner had known one, Frederick W. Benduhn, who was engaged in the real estate business in Detroit, Michigan and elsewhere. Benduhn and petitioner had certain business dealings with each other. During the depression Benduhn had been wiped out financially. Prior to 1937 he had been working hard to get started again. On February 10, 1937, petitioner advanced Benduhn $2,500 in cash as a loan and took his promissory note for that amount due on demand with 6 percent interest from date. This money was loaned Benduhn to be used by him in establishing a health service in New York City. The proposed enterprise was not a business success. On September 30, 1938, petitioner further loaned Benduhn $1,000 and November 4, 1938, loaned him $125, both of these latter loans being in connection with some kind of a lottery enterprise he was promoting in connection with a carnival in the State of New Mexico. In 1939 Benduhn was indicted for violating the Federal lottery laws and was subsequently convicted in 1940 and served a prison sentence. Benduhn *488 had no assets at the time he was indicted and petitioner never collected anything on the debt. Petitioner's debt against Benduhn in the amount of $3,625 became worthless in the year 1939. Opinion The petitioner has established to our satisfaction that his debt against Benduhn was genuine; that it represented money which he had loaned Benduhn for the purpose of using in certain business enterprises which the latter was endeavoring to get established; these enterprises proved failures and in 1939 Benduhn fell afoul of the Federal lottery laws, was indicted, convicted and sent to prison. He had no money or other assets and on these facts we think it is clear that the debt became worthless in the year 1939. The applicable statute is section 124 of the Revenue Act of 1942 which amends section 23(k) of the Internal Revenue Code. The part of section 124, Revenue Act of 1942, which is applicable reads as follows: (a) General Rule. - Section 23 (k) (relating to bad debts and securities becoming worthless) is amended to read as follows: (k) Bad Debts. - (1) General rule. - Debts which become worthless within the taxable year; * * * The foregoing provision of section 124, Revenue *489 Act of 1942, is made applicable to all taxable years beginning after December 31, 1938. Inasmuch as the assignment of error which we are now discussing concerns the taxable year 1939, the foregoing amendment to section 23(k), Internal Revenue Code, is applicable. A reading of the provision we have quoted seems to show that it is not material in what year the taxpayer ascertains his debt to be worthless. The vital thing is, in what year did the debt become worthless. In our findings of fact we have found that petitioner's debt against Benduhn became worthless in 1939. That being the case, he is entitled to the deduction which he claims under the provisions of section 23(k), Internal Revenue Code, as amended by section 124, Revenue Act of 1942. Decision will be entered under Rule 50.